[No. D043571. Fourth Dist., Div. One. May 10, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
LORENZO LEE TANNER, Defendant and Appellant.

224

226

**COUNSEL**

Gary Roberts, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Maxine P. Cutler and Kristin Anton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—This is an appeal from a judgment committing Lorenzo Lee Tanner to a five-year prison term after he admitted a third and fourth violation of drug-related conditions of probation and the court terminated his probation under Proposition 36, the Substance Abuse Crime Prevention Act of 2000 (the Act). (The Act is codified at Pen. Code, §§ 1210, 1210.1 and 3063 (all statutory references are to this code unless otherwise specified) and division 10.8 (commencing with § 11999.4) of the Health & Saf. Code.)

Tanner raises numerous arguments in support of his contention the trial court erred in prematurely revoking his Proposition 36 probation and sentencing him to prison. He essentially asserts the provisions of the Act required the state to formally make three separate noticed motions before the trial court could properly revoke his probation based solely upon drug-related violations of probation conditions imposed under the Act, and that without such due process and proper revocation, his failure to object to the court's sentence does not result in a waiver because the sentence was unauthorized. Tanner finally contends that if the issues regarding his sentence and revocation of probation under the Act are determined to be waived, he was denied the effective assistance of counsel.

As we explain below, we agree with Tanner that the Act requires the state to make three noticed motions before a trial court can properly revoke probation under the Act based solely upon drug-related violations of probation conditions, that the failure of the state to do so here rendered the revocation of Tanner's probation under the Act improper, and that based on the particular facts of this case, Tanner has not waived his right to challenge the improper revocation of his Proposition 36 probation and subsequent sentence. We, therefore, reverse and remand with directions to the trial court to reinstate Tanner's probation under the Act, and to permit the state to reopen the second properly noticed probation revocation hearing for a determination of Tanner's amenability to drug treatment under the Act.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2003, Tanner, who was on active state parole, pled guilty to possessing a usable quantity of methamphetamine (meth) in violation of Health and Safety Code section 11377, subdivision (a), and admitted four prison priors (§ 667.5, subd. (b)) in exchange for the case being handled under the Act. Tanner executed a section 1210 judgment addendum, agreeing to numerous drug-related and non-drug-related conditions of probation, including, among other things, "participate in and successfully complete a drug treatment program," not use or possess any controlled substance, and "submit

to any test for the use of controlled substance . . . ." Tanner was released on his own recognizance in this case, pending a review hearing set for August 21, 2003.

For that hearing, the probation officer filed with the court a section 1210 review/violation report indicating Tanner was "currently in compliance with probation, having been admitted at the Episcopal Community Services (ECS) South Bay on 07/21/2003. However, the provider reported that the defendant was absent on 07/29/2003, 07/30/2003, 7/31/2003 and 8/12/2003." The report recommended probation continue on the same terms and conditions as previously ordered even though Tanner had tested positive for meth on 07/13/2003, and was in "marginal compliance in drug treatment at the ECS program."

At the hearing, a deputy who had observed Tanner and had given him several field sobriety tests (FST's) and the opportunity to provide a urine sample over the period of an hour and a half that afternoon, represented to the court that Tanner was unable to produce any urine samples and was believed to be "under the influence." Based on the positive FST results and the failure to test, the court summarily revoked Tanner's probation and set the matter for a review hearing.

On August 28, 2003, Tanner appeared at the review hearing, waived his right to an evidentiary hearing, admitted he had violated his probation on August 18, 2003, by being discharged from his treatment program and again on August 21, 2003, by testing positive for drugs at court, and requested he be reinstated on probation under the Act. After the court accepted Tanner's admissions to his first and second violations of probation, it formally revoked his probation and then reinstated Tanner on probation on the same terms and conditions, ordering him to report to the probation department. When the court then asked, "And understand you're on your last chance so pay attention. All right?," Tanner responded, "Yeah." A review hearing was set for October 15, 2003.

The four-page section 1210 review/violation report filed by the probation officer for the next review hearing recapped that Tanner had suffered two prior drug-related violations on August 28, 2003, and indicated he had been terminated from Community Connections Resource Center (CCRC), a second drug treatment program, on September 29, 2003, for excessive absences (10) and the failure to drug test on September 15, 2003; he was $100 in arrears in treatment fees; and he had tested positive for meth at the probation department on September 29, 2003. Based on the new violations of probation, the report recommended that Tanner be found unamenable to section 1210 because he had exhausted his chances under the Act and that the matter be set for sentencing.

In addition, the report noted Tanner had failed to test at CCRC on July 24, 2003, and had tested positive for meth there on September 2, 2003, but that no violations were being recommended on those breaches of his probation conditions. The report also advised the court that Tanner had reported to the probation office two times in early October requesting a section 1210 referral to another drug treatment program and was told no action could be taken until after the October 15, 2003 review hearing.

At the hearing on the matter, which alleged two new violations of his probation, Tanner waived his right to an evidentiary hearing and admitted the violations of being discharged from his treatment program and of testing positive for drugs on September 29, 2003. Although Tanner was represented by counsel at the hearing, Tanner then explained he had paper work with him to show he had been in detention on his parole from September 21 to 28, 2003, which counted for eight of the absences at CCRC. He also related that after he had been discharged from CCRC he took it upon himself to get some referrals to show he could take the initiative to get off of drugs. He had a new daughter so he had gone to juvenile court and signed forms to declare his parental rights as a father and had enrolled in the SARMS (substance abuse recovery management system) program through the dependency court. Tanner wanted an opportunity to be a father, clarifying that he admitted he did the drugs, but after the 29th of September 2003, he had "stopped."

The court told Tanner that if it was just a matter of being terminated because he had been in custody it would not find a violation, but that there was the positive test which he admitted. The court explained that the third and fourth drug-related violations had been found and he "only get[s] three. . . . [And in any event] there's three drug related violations. . . ." The court advised Tanner it was revoking probation under section 1210, but continuing the sentencing date to allow him an opportunity to cooperate with probation to get his sentencing report done and show the court what he had done and how he had stayed clean. The court told Tanner it was making no promises to grant probation rather than state prison because he had admitted four prison priors, but it wanted to give him a chance to show how he had turned his life around.

In response to Tanner's inquiry as to whether probation would give him a referral for a treatment program, the court clarified that probation had been revoked, the probation department was preparing a sentencing report and Tanner needed to use his own initiative to get into treatment. With the prosecutor's agreement, Tanner waived time for "due course sentencing" to give him more time "to establish [his] foundation" and show the court what he had done.

In addition to the court minutes of the October 15, 2003 hearing showing Tanner had admitted two new drug-related violations of the conditions of his section 1210 probation and such probation terminated with the matter set for sentencing for December 4, 2003, it also stated Tanner was found to be unamenable to section 1210 treatment.

At the time of sentencing, the court considered a 14-page probation revocation report which detailed Tanner's criminal history, the various violations of his section 1210 probation, and his subsequent attempts at drug treatment since his section 1210 probation had been revoked. The report further revealed that when Tanner was interviewed by probation, he admitted he had used meth seven days before the interview even though he was then in outpatient treatment and involved with child protective services to try to regain custody of his daughter, who had tested positive for meth upon birth. Attached to the probation report were a treatment plan dated October 27, 2003, from McAlister Institute, a recovery services plan from the San Diego County Dependency Court, and a 10-page detention report filed with the superior court by the health and human services/children services department.[1]

Despite these new attempts at recovery, the probation officer concluded Tanner "appear[ed] to be completely unamenable to [section] 1210 treatment and has exhausted his chances in [section] 1210. Given his extensive criminal history and his numerous opportunities on probation, parole and various rehabilitation oriented programs, the [probation officer was] left with little or no alternative than to recommend state prison . . . ."

After hearing from Tanner's counsel, who initially requested a continuance to allow Tanner to retain a private attorney, which was opposed by the prosecution, the court informed Tanner it would continue the sentencing hearing but he would be "going into custody today," noting he was still doing drugs. When the court refused to change its mind after hearing Tanner's plea to remain out of custody so he could continue with the reunification plan in hopes of gaining custody of his daughter, Tanner conferred with his attorney, who then advised the court Tanner no longer wished to continue his sentencing and there was no legal cause why judgment should not then be pronounced. Counsel reiterated Tanner's criminal record since 1994 had contained no violence, only various drug offenses, and the recent birth of his daughter had given Tanner an impetus to turn his life around. Counsel asked

---

[1] Although the report states Tanner was interviewed on September 14, 2003, because the interview took place after the October 2003 birth of his daughter, his October 15, 2003 court date, and his enrollment in various programs, we presume that such date is a typographical error and that Tanner was interviewed on November 14, 2003, the same date the probation officer contacted the various program directors regarding Tanner's progress in recovery.

the court to allow Tanner to participate in his recovery through a grant of probation and, if the court were unwilling to do so, to impose a three-year term by striking the prison priors and imposing an upper term for his current drug offense. The prosecutor requested the court impose seven years for Tanner's current offense and priors.

After Tanner personally addressed the court regarding his addiction and his desire to change by going into a residential treatment program so he could be a father to his daughter, the court noted it had read the reports carefully, believed Tanner sincerely wanted to be a father to his daughter, but also believed he would choose drugs over the child because he had continued to take them even after her birth. The court therefore determined a prison sentence was warranted, finding Tanner presumptively ineligible for probation and this was not an unusual case, and denied probation. The court imposed a total prison term of five years, consisting of the midterm of two years for the current drug offense and three additional years for three of his prison priors, striking the fourth prison prior in the interest of justice.

Tanner timely filed a notice of appeal on January 12, 2004, and the trial court signed a certificate of probable cause on January 13, 2004.

## DISCUSSION

### I

### REVOCATION OF SECTION 1210 PROBATION AND DUE PROCESS

A. *General Legal Principles Regarding Proposition 36 and Due Process*

 The Act, which was approved by California's voters on November 7, 2000, "declared a purpose of diverting 'from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses.' (Prop. 36, § 3(a).)[2] The [A]ct seeks to achieve this purpose by adding provisions to the Penal Code, among them section 1210.1, which requires probation for persons convicted of a nonviolent drug possession offense, and

---

[2] Section 3 of Proposition 36 also stated its purpose was " '[t]o halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who would be better served by community-based treatment; and [¶] . . . [t]o enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies.' " (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397 [130 Cal.Rptr.2d 554] (*Taylor*).)

encourages the trial courts to make enrollment in a drug treatment program a condition of that probation. A defendant who violates probation by committing nonviolent drug possession offenses [or by violating drug-related probation conditions] is given two opportunities to reform. The commission of a third such offense [or violation], however, renders the defendant ineligible for probation. [¶] ▉ Proposition 36 was intended to have a far-ranging application to all classes of nonviolent drug offenders, including not only first-time offenders, but also defendants on probation or parole as of its effective date. (Pen. Code, §§ 1210.1, subd. (e)(3)(D), (E), & (F) [for those already on probation], 3063.1, subd. (d)(3)(C) [for those already on parole]; *In re DeLong* (2001) 93 Cal.App.4th 562, 567 [113 Cal.Rptr.2d 385] [(*DeLong*)].)" (*People v. Williams* (2003) 106 Cal.App.4th 694, 698–699 [131 Cal.Rptr.2d 546].)

Subdivision (a) of section 1210.1 of the Act specifically provides in pertinent part that "[n]otwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation. As a condition of probation the court shall require participation in and completion of an appropriate drug treatment program. The court may also impose, as a condition of probation, participation in vocational training, family counseling, literacy training and/or community service. A court may not impose incarceration as an additional condition of probation. Aside from the limitations imposed in this subdivision, the trial court is not otherwise limited in the type of probation conditions it may impose. Probation shall be imposed by suspending the imposition of sentence."

▉ Subdivision (b) of section 1210.1 of the Act "sets forth five categories of defendants who are ineligible to receive probation pursuant to subdivision (a). 'Section 1210.1, subdivision (b) excludes those defendants who, in addition to such a drug conviction, (1) have committed serious or violent offenses within the last five years; (2) are convicted in the same proceeding of a felony or misdemeanor not related to the use of drugs; (3) possessed or were under the influence of a specified drug while using a firearm; (4) refuse drug treatment as a condition of probation; or (5) have twice failed drug treatment as a condition of probation and been found not to be amenable to drug treatment. [Citation.]' [Citations.]" (*People v. Guzman* (2003) 109 Cal.App.4th 341, 347 [134 Cal.Rptr.2d 727] (*Guzman*).)

▉ The Act also includes specific rules that apply when a defendant granted probation under the Act violates his or her probation. (*People v. Murillo* (2002) 102 Cal.App.4th 1414, 1419 [126 Cal.Rptr.2d 358].) As noted by the court in *Guzman*: "These rules, which are enunciated in subdivision (e) of section 1210.1, recognize that 'drug abusers often initially

falter in their recovery' and 'give [] offenders several chances at probation before permitting a court to impose jail time.' [Citation.] [¶] Different rules apply depending on whether a defendant violates a non-drug-related or drug-related condition of probation. A ' "drug-related condition of probation" ' includes 'a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling.' (§ 1210.1, subd. (f).) . . . [¶] The first time a defendant who was placed on probation after the effective date of [the Act] violates a *drug-related* condition of probation, the trial court must revoke his probation if the People prove by a preponderance of the evidence that defendant poses a danger to the safety of others. In the absence of such proof, defendant must be returned to probation; however, the court remains free to intensify or change the drug treatment plan. (§ 1210.1, subd. (e)(3)(A).) Upon a defendant's second violation of a drug-related condition of probation, the court is required to revoke his probation only if the People establish by a preponderance of the evidence that defendant poses a danger to the safety of others or is unamenable to drug treatment. If probation is not removed, the court is nevertheless free to modify defendant's drug treatment plan. (§ 1210.1, subd. (e)(3)(B).) If the People establish a third violation of a drug-related condition of probation, probation must be revoked. Thus, a defendant loses the protection of section 1210.1, subdivision (a), only after violating a drug-related condition of probation three times. Only then is the defendant no longer eligible for continued probation under section 1210.1, subdivision (a). (§ 1210.1, subd. (e)(3)(C); [citations].)"[3] (*Guzman, supra*, 109 Cal.App.4th pp. 347–348, fn. omitted.)

---

[3] Subdivision (e) of section 1210.1 provides in pertinent part: "(1) If probation is revoked pursuant to the provisions of this subdivision, the defendant may be incarcerated pursuant to otherwise applicable law without regard to the provisions of this section. [¶] . . . [¶] (3) Drug-related probation violations [¶] (A) If a defendant receives probation under subdivision (a), and violates that probation either by committing a nonviolent drug possession offense, or a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210, or by violating a drug-related condition of probation, *and the state moves to revoke probation*, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others. If the court does not revoke probation, it may intensify or alter the drug treatment plan. [¶] (B) If a defendant receives probation under subdivision (a), and for the second time violates that probation either by committing a nonviolent drug possession offense, or a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210, or by violating a drug-related condition of probation, *and the state moves for a second time to revoke probation*, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence either that the defendant poses a danger to the safety of others or is unamenable to drug treatment. In

■ Generally, a defendant who receives probation under the Act can only have that probation revoked in accordance with the terms of the statutory scheme. (*In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 1006 [130 Cal.Rptr.2d 98] (*Mehdizadeh*).) Only when there is an established third drug-related violation under the Act, does "the court regain[] its discretion to impose jail or prison time. [Citation.]" (*Taylor, supra,* 105 Cal.App.4th at p. 1398.)

■ As a matter of due process, a defendant facing a formal traditional probation revocation hearing is entitled to written notice of the claimed violations, disclosure of the evidence against him, opportunity to be heard and to present evidence, the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation), a neutral and detached fact finder and a written statement of the evidence relied on and the reasons for revoking probation. (*People v. Vickers* (1972) 8 Cal.3d 451, 457–459 [105 Cal.Rptr. 305, 503 P.2d 1313].) We presume substantial compliance with such due process is also required for revocation of probation under the Act. The prosecution has the burden of producing evidence and the burden of persuasion showing a probation violation under the Act occurred by a preponderance of the evidence. (*People v. Atwood* (2003) 110 Cal.App.4th 805, 812–813 [2 Cal.Rptr.3d 67] (*Atwood*).)

B. *Analysis*

The gist of Tanner's various contentions is that the revocation of his probation under the Act was premature because contrary to the statutory provisions applicable to such revocations (§ 1210.1, subd. (e)(3)(A)–(F)), the trial court revoked his probation based on the sheer number of drug-related

---

determining whether a defendant is unamenable to drug treatment, the court may consider, to the extent relevant, whether the defendant (i) has committed a serious violation of rules at the drug treatment program, (ii) has repeatedly committed violations of program rules that inhibit the defendant's ability to function in the program, or (iii) has continually refused to participate in the program or asked to be removed from the program. If the court does not revoke probation, it may intensify or alter the drug treatment plan. [¶] (C) If a defendant receives probation under subdivision (a), and for the third time violates that probation either by committing a nonviolent drug possession offense, or by violating a drug-related condition of probation, *and the state moves for a third time to revoke probation*, the court shall conduct a hearing to determine whether probation shall be revoked. If the alleged probation violation is proved, the defendant is not eligible for continued probation under subdivision (a)." (Italics added.)

Section 1210.1, subdivision (e), also contains specific provisions relating to probation violations committed by defendants who already were on probation on the Act's effective date. (See § 1210.1, subd. (e)(3)(D), (E) and (F).) Similarly, section 3063.1, subdivision (d)(3)(A) through (D) relates to parole violations committed by defendants who already were on parole on the Act's effective date. (*DeLong, supra,* 93 Cal.App.4th at p. 569.)

violations of his probation conditions and not after the state had moved for a revocation for the third time based on such violations. Relying on the plain language of section 1210.1, subdivision (e)(3), which includes the phrases, "and the state moves to revoke probation," "and the state moves for a second time to revoke probation," and "the state moves for a third time to revoke probation," and on reasoning in *Mehdizadeh, supra,* 105 Cal.App.4th 995 that such phrases "eliminate the trial court's power to revoke probation on its own motion" (*id.* at p. 1005), Tanner specifically argues the Act provides a procedure requiring the calculation of the number of times a Proposition 36 probation is deemed revoked for violations of drug-related reasons is based on the number of times the state "moves" to revoke probation and the court does so, and not merely on the total number of drug-related violations. In other words, Tanner maintains the statutory scheme requires the state to bring three noticed motions to revoke a probationer's probation under the Act before the court may revoke probation solely based on drug-related violations.

The People essentially concur in Tanner's interpretation of the revocation portions of the Act by agreeing in the respondent's brief that the trial court did indeed count the number of violations that Tanner had admitted rather than the number of times the state had moved for revocation of Tanner's probation and would be in error if it revoked Tanner's probation based solely due to his four violations in two different hearings. The People claim however that the court also found Tanner was unamenable to drug treatment and therefore it properly refused to reinstate his probation after two revocations under the statutory scheme. When questioned at oral argument on this point, the People argued any error in the required procedural process for revocation of probation under the Act was waived by Tanner, and in any event, he had been provided all the due process and chances required under Proposition 36. We disagree.

■ Section 1210.1, subdivision (e)(3) sets forth the procedure for revocation of probation under the Act via "a detailed system of escalating sanctions for drug-related violations of probation by defendants." (*Mehdizadeh, supra,* 105 Cal.App.4th at p. 1005.) As noted above, and as conceded by the People, the first time the state moves for revocation and it is established an offender violates a drug-related condition of probation, he is entitled to be returned to probation unless the offender poses a danger to others. (§ 1210.1, subd. (e)(3)(A).) The second time the state moves for revocation and it is established an offender has violated a drug-related condition of probation for a second time, he is again entitled to be returned to probation unless he poses a danger to others or is unamenable to treatment. (§ 1210.1, subd. (e)(3)(B).) Only when the states moves for a third time for revocation and it is established the offender has violated a drug-related condition of probation a third time, "does an offender lose the benefit of Proposition 36's directive for

treatment instead of incarceration. (§ 1210.1, subd. (e)(3)[(C)].)" (*Atwood, supra*, 110 Cal.App.4th at p. 809.)

That the state is required to "move" each time as a prerequisite to a finding of a violation of a drug-related condition of probation which may trigger revocation of probation under the Act is fully supported by the plain language of the statute and the fundamental rule of statutory construction that particular provisions or phrases should be interpreted so as not to render them superfluous or unnecessary. (§ 1210.1, subd. (e)(3); *Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063].) Such interpretation also comports with the apparent purpose and intention behind Proposition 36 to give two chances to nonviolent drug offenders who commit additional nonviolent drug possession offenses or violate drug-related probation conditions to reform before they are no longer eligible for probation under the Act. (*People v. Johnson* (2003) 114 Cal.App.4th 284, 295 [7 Cal.Rptr.3d 492]; *DeLong, supra*, 93 Cal.App.4th at pp. 566–567.)

With regard to due process, we note that the Act and phrase in question are silent on the exact procedure by which the state is to move to revoke probation, whether it be written or oral. We believe that consistent with the purpose of the Act, the trial court has the authority to consider the matters brought before it by the state and to revoke probation under the Act after it has been moved three separate times for violations of drug-related conditions of probation and those are proven or admitted after three hearings.

Here, although the record reflects Tanner was afforded due process for the August 28, 2003 and October 15, 2003 hearings,[4] it shows the trial court mistakenly construed Tanner's two admissions to violations of drug-related conditions of his probation at the first hearing after the state moved to revoke his probation as his two opportunities under the Act and warned him he only had one more violation before he would no longer be eligible for Proposition 36 probation. When Tanner admitted a third and fourth violation at the beginning of the hearing after the state moved to revoke his probation the second time, the court essentially told him his probation under the Act was revoked because he then had his three violations of drug-related conditions of probation. In revoking Tanner's probation under the Act solely on the number

---

[4] Tanner had actual notice of what violations of his conditions of probation the state sought to prove for the August 28, 2003 hearing because of his court appearance on August 21, 2003, and also necessarily had actual notice of his termination from the first drug treatment program ECS which he, while represented by counsel, admitted as a violation of his probation after waiving an evidentiary hearing on the matter. The written section 1210 review/violation report filed with the court for the October 15, 2003 hearing gave Tanner notice of his numerous breaches of the conditions of his probation under the Act that the state was moving to have determined as actual violations of his probation.

of violations he had admitted after only two motions for revocation by the state, the court erred.

Contrary to the People's position on appeal that the court properly revoked Tanner's probation under the Act because it found at the second hearing he was unamenable to drug treatment as provided in section 1210.1, subdivision (e)(3)(B), the reporter's transcript of the hearing shows the court did not reach the issue of amenability because it had already revoked Tanner's probation based on his admissions to a third and fourth violation of drug-related conditions of his probation under the Act. That the court minutes state Tanner was "found to be unamenable to [section] 1210 treatment" does not override the oral pronouncements of the court. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [121 Cal.Rptr.2d 603, 48 P.3d 1155].) The minute entry, which is at variance with the actual record of the October 15, 2003 hearing, appears to be nothing more than a clerical error that finds no support in the transcript of the hearing. Tanner neither admitted he was unamenable to further drug treatment nor did the prosecutor raise the issue of his amenability at the hearing. Although there are statements in the probation report that could support a court finding Tanner was unamenable to further treatment under the Act, there are also statements supporting Tanner's continued attempts for further treatment. Thus, on this record we cannot find the trial court even impliedly found Tanner was unamenable to drug treatment under the Act.

Nor can we find, as the People suggest, that Tanner's own conduct rendered him ineligible for probation under section 1210.1, subdivision (b)(4) and (5) by the time of the second hearing. Such assertion is based on the court having made an unamenability determination, which we have already rejected, or on the court having deemed Tanner to have refused drug treatment as a condition of probation. This latter basis is also refuted by the record, which shows the court did not address or make any finding on whether Tanner was still eligible for probation under the Act because he refused treatment or was unamenable to treatment.

■ To reiterate, we conclude the trial court erred in prematurely revoking Tanner's probation under Proposition 36 solely for three violations of drug-related conditions of his probation after only two motions by the state and two hearings for revocation. Because Tanner was entitled at the second hearing to reinstatement of his probation under the Act in the absence of additional findings he was either a danger to the safety of others or was unamenable to drug treatment, his subsequent incarceration cannot be upheld. We therefore reverse the judgment and remand the matter to the trial court with directions to reinstate Tanner's Proposition 36 probation.

■ Because it appears that all parties and the court were laboring under a misunderstanding of the revocation procedures under the Act, in the interests of justice, the court should permit the state to reopen the second properly noticed probation revocation hearing for a determination of Tanner's amenability to drug treatment under the Act. "There is no legal impediment to reopening the probation revocation hearing for the taking of additional evidence, [or for further fact finding,] because 'jeopardy does not attach in probation revocation hearings, which do not constitute "trial" on a new criminal charge, result in "conviction," or integrally relate to "enforcement" of the criminal laws. [Citations.]' [Citation.]" (*Atwood, supra*, 110 Cal.App.4th at p. 813.)

## II

## WAIVER

Relying on his position the revocation of his probation under the Act was premature as a matter of law, Tanner claims his failure to object to such revocation and the subsequent sentence imposed does not result in the waiver of such issues on appeal. The People maintain Tanner has waived any alleged defects in the court's ruling on the revocation of his probation under the Act and its sentencing choices and reasoning because he failed to make contemporaneous objections at the appropriate times even though he received a meaningful opportunity to do so. We find no waiver.

We are aware that Tanner was represented by counsel at the initial change of plea hearing as well as every court proceeding leading up to his revocation of probation under the Act and eventual sentencing, and he twice waived evidentiary hearings regarding the proof of the violations sought by the state and admitted them. Further Tanner did not object to the notice or informal procedures utilized by counsel, the court and probation in determining his violations. However, the record also reflects that the court and all counsel were operating under the mistaken belief that Proposition 36 probation would automatically be revoked once a probationer was found to have three violations of drug-related probation conditions and not after the state had moved three times to revoke probation under the Act based on those violations. Under these circumstances, we cannot find that Tanner's failure to object to the court terminating probation under the Act without a finding of amenability at the second hearing or to the court sentencing him to prison waived these issues on appeal.

In light of our holding that the matter must be reversed and remanded for further proceedings, we need not address Tanner's additional arguments or claims of error.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Benke, Acting P. J., and Aaron, J., concurred.