[No. C052041. Third Dist. Nov. 29, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY ANSTEN HAZLE, Defendant and Appellant.

**COUNSEL**

James H. Dippery, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Angelo S. Edralin, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**MORRISON, J.**—Proposition 36 ordinarily allows eligible drug users three chances at probation before a trial court may send a defendant to prison, although the relevant statutes do not guarantee this result. In this case defendant's second and third probation revocation petitions were adjudicated at one time, a common practice we have endorsed. (*People v. Budwiser* (2006) 140 Cal.App.4th 105 [44 Cal.Rptr.3d 296] (*Budwiser*).) However, in this case the facts supporting the *third* revocation petition took place before the *second* petition was filed. Nevertheless, when the trial court sustained the second and third petitions, it concluded defendant was no longer eligible for probation.

Defendant's basic position is that he was deprived of a third chance at probation, in violation of at least the spirit of Proposition 36, if not its text. In *People v. Tanner* (2005) 129 Cal.App.4th 223 [28 Cal.Rptr.3d 201] (*Tanner*) the Attorney General conceded the basic legal point defendant raises in this appeal. (*Id.* at p. 235.) In a supplemental brief the Attorney General has advised this court that it views *Budwiser, supra,* 140 Cal.App.4th 105, as controlling on the facts of this case because "the triggering event for termination of Proposition 36 eligibility is the filing of separate motions to revoke probation."

For reasons we explain, we do not believe *Budwiser* is controlling on the facts of this case, and we reverse.

## BACKGROUND

On June 14, 2004, defendant Barry Ansten Hazle pleaded guilty to possession of methamphetamine and was placed on Proposition 36 probation. (Health & Saf. Code, § 11377, subd. (a).) Although the Attorney General cites to parallel statutory provisions applicable to persons on probation at the time Proposition 36 took effect (July 1, 2001; see *People v. Floyd* (2003) 31 Cal.4th 179, 183 [1 Cal.Rptr.3d 885, 72 P.3d 820]), defendant was placed on probation after that date.

On November 29, 2004, the first petition to revoke defendant's probation was filed, alleging that he had failed to report as directed on two dates and had used methamphetamine. That day defendant admitted the allegations and Judge Steven Jahr revoked and then reinstated probation.

On May 20, 2005, the second petition was filed, alleging defendant "was terminated from his drug treatment program for non-compliance." It alleged that he had submitted a dirty urine sample, had failed to reregister his

address, and failed to report for office visits as directed. That day defendant denied the allegations at an unreported hearing conducted by Judge Wilson Curle.

On May 27, 2005, the third petition was filed, alleging that defendant had possessed alcohol *on May 19, 2005*. Thus, the facts supporting the third petition occurred *before* the second petition had been filed, and perforce before it was served on defendant.

On September 28, 2005, Judge James Ruggiero conducted a hearing on the second and third petitions. After hearing testimony from probation officers and the drug program coordinator, Judge Ruggiero continued the matter, and on October 3, 2005, he sustained the allegations in both petitions, except for one allegation that was withdrawn by the prosecutor. Judge Ruggiero found all of the violations were drug related. The People do not contend that any of the violations were *not* drug related under Proposition 36.

Judge Ruggiero also found that defendant was amenable to further treatment under Proposition 36. This was based on testimony by the program coordinator for the Shasta County Proposition 36 program that defendant had nearly completed the required "Level 2 outpatient treatment program," before violating the terms of probation.

In the trial court defense counsel cited *Tanner, supra,* 129 Cal.App.4th 223, in support of his view that merely counting petitions was not enough; the purpose of Proposition 36 was to give eligible drug offenders "two chances to reform"; for this reason the timing of the petitions in this case called for consolidation of the petitions, that is, treating the third petition as part of the second petition, so that defendant would not lose his last chance to complete probation. The prosecutor responded in part by noting that the second petition had been received by the court on April 27, 2005, therefore, the filing of the third petition, albeit based on conduct occurring before the second petition was filed, was done in good faith and not to "kick somebody out of Prop. 36." The defense replied that People's motives were not at issue.

Judge Ruggiero rejected the defense argument that the petitions should be deemed consolidated and found defendant was no longer eligible for Proposition 36 treatment.

Apparently due to his relationship with a scheduled witness, Judge Ruggiero disqualified himself and Judge William Gallagher took over the case.

On February 27, 2006, Judge Gallagher conducted a sentencing hearing. Defense counsel renewed his request that the two petitions be deemed one

petition. Judge Gallagher concluded that whether or not he could reconsider Judge Ruggiero's ruling, he agreed with that ruling.

Because defendant had three prior felonies, probation was disfavored; the trial court found this was not an unusual case, and sent him to prison for the midterm of two years. However, *on the stipulation of the defense and prosecution* the trial court later recalled the sentence, revoked an order granting bail on appeal and committed defendant to the California Rehabilitation Center (CRC).

Judge Gallagher had granted bail on appeal because he felt the case raised a substantial question, namely, whether the purposes of Proposition 36 had been frustrated by the procedural posture of this case, and he encouraged counsel to seek review. Neither party suggests that the CRC commitment has any impact on this appeal.

## DISCUSSION

Proposition 36, the Substance Abuse and Crime Prevention Act of 2000 (Act), was adopted at the November 7, 2000, General Election, and is largely codified at Penal Code sections 1210 and 1210.1 (further section references are to the Penal Code). For the reasons stated in footnote 1, we interpret the version of section 1210.1 applicable when the trial court made its ruling. (Stats. 2001, ch. 721, § 3.)

"By replacing incarceration with community-based treatment, Proposition 36 works a sea change in California's response to nonviolent drug possession offenses. In its prefatory statement, it states, 'The People of the State of California hereby declare their purpose and intent in enacting this act to be as follows: (a) To divert from incarceration into community-based substance abuse treatment programs nonviolent defendants, probationers and parolees charged with simple drug possession or drug use offenses; [¶] (b) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and reincarceration—of nonviolent drug users who would be better served by community-based treatment; and [¶] (c) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies.'

■ "Anticipating that drug abusers often initially falter in their recovery, Proposition 36 gives offenders several chances at probation before permitting a court to impose jail time. The first time an offender violates a *drug-related* condition of probation, he is entitled to be returned to probation unless he

poses a danger to others. [Citation.] The second time he violates a drug-related condition of probation, he is entitled to be returned to probation unless he poses a danger to others or is unamenable to treatment. [Citation.] Only upon a third violation of a drug-related condition of probation does an offender lose the benefit of Proposition 36's directive for treatment instead of incarceration. [Citation.] Upon such a violation, the court regains its discretion to impose jail or prison time." (*In re Taylor* (2003) 105 Cal.App.4th 1394, 1397–1398 [130 Cal.Rptr.2d 554], fns. omitted (*Taylor*); see *People v. Bowen* (2004) 125 Cal.App.4th 101, 105 [22 Cal.Rptr.3d 655].)

The possible consequences increase in severity as a defendant moves from his first, second and third chances at probation, as just stated. (*Taylor, supra,* 105 Cal.App.4th at pp. 1397–1398.) Further, after the first or second adjudicated violations of probation the trial court "may intensify or alter the drug treatment plan." (§ 1210.1, former subd. (e)(3)(A), (B).) If a third violation "is proved, the defendant is not eligible for continued probation" under Proposition 36. (§ 1210.1, former subd. (e)(3)(C).) "Thus, a defendant loses the protection of section 1210.1, subdivision (a), only after violating a drug-related condition of probation three times." (*People v. Guzman* (2003) 109 Cal.App.4th 341, 347–348 [134 Cal.Rptr.2d 727].)

■   Section 1210.1, subdivision (e)(3)(A) through (C) sets out the consequences of drug-related violations of probation. The parallel structure of the relevant subdivisions describes procedurally the mechanism for proving probation violations as follows: "If a defendant . . . violates . . . probation . . . by violating a drug-related condition of probation, and the state moves to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked." (§ 1210.1, former subd. (e)(3)(A)–(C).) The relevant portion of the statute is set out in full in the appendix.

In *Budwiser, supra,* 140 Cal.App.4th 105, the defendant alleged a due process violation after the trial court conducted a single hearing on two probation violation petitions. We rejected this claim in part as follows: "Contrary to defendant's argument, [section 1210.1, subdivision (e)(A) and (B) does] not require separate hearings. *The event triggering revocation for each subdivision is the separate motion to revoke probation filed by the People.* Although each provision requires 'a hearing to determine whether probation shall be revoked,' nothing in the statute requires that the hearings be separate. What is important under [paragraphs] (A) and (B) is that the defendant has committed separate violations of probation (indicating his unamenability to treatment), resulting in separate motions (petitions) to revoke, not whether the violations are adjudicated in separate hearings. Moreover, it would be an absurd waste of judicial resources to construe the statutes so as to require a separate hearing for each motion to revoke probation." (*Budwiser, supra,* 140 Cal.App.4th at p. 109, italics added.)

■ While we agree entirely with this passage in *Budwiser, supra,* 140 Cal.App.4th 105, it does not fully answer the question raised in this case. In *Budwiser* the defendant claimed a due process right to separate hearings on each petition, and we rejected that claim, both because it was not required by statute and because it would result in a waste of time with no offsetting benefit. In this case, defendant does not complain that only one hearing was held on two petitions, he complains that the manner in which the petitions were filed deprived him of a third period in which to reform his errant conduct. In effect, he claims the second and third petitions should not be counted as two "strikes" for purposes of Proposition 36, but only as one. This point was not raised or discussed in *Budwiser.* (*Hart v. Burnett* (1860) 15 Cal. 530, 598 [cases not authority for points not considered].)

We look again to the statute. Section 1210.1, former subdivision (e)(3) had three subsections corresponding to the first, second and third nonviolent and drug-related probation violations.

On the first violation, if "the state moves to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves . . . that the defendant poses a danger to the safety of others." (§ 1210.1, former subd. (e)(3)(A).)

On the second violation, if "the state moves for a second time to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves . . . either that the defendant poses a danger to the safety of others or is unamenable to drug treatment." (§ 1210.1, former subd. (e)(3)(B).)

On the third violation, if "the state moves for a third time to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. If the alleged probation violation is proved, the defendant is not eligible for continued probation under subdivision (a)." (§ 1210.1, former subd. (e)(3)(C).) Although Judge Ruggiero found there was "no showing of non-amenability," he did not make the specific findings required to reimpose probation under this subdivision.

A recurring requirement in each of these three paragraphs was that the state must "move[] . . . to revoke probation."

"The term 'motion' generally means an application made to a court or judge for the purpose of obtaining a rule or order directing some act to be done in favor of the applicant." (60 C.J.S. (2002) Motions and Orders, § 1,

p. 4.) Although the statute speaks in terms of the People *moving* to revoke probation, generally, a motion is ineffectual absent *notice*. "[N]otices must be given of any application where the rights of an adverse party are affected, even though no statute, as here, specifically requires it." (*People v. Hadley* (1967) 257 Cal.App.2d Supp. 871, 875 [64 Cal.Rptr. 777]; see 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 6, pp. 405–406.) Probation cannot be formally revoked absent notice. Indeed, one reason given to explain why trial courts retain the power to *summarily* revoke probation is because it ensures the probationer will be returned to court *and given notice* of the alleged grounds. (*People v. Tapia* (2001) 91 Cal.App.4th 738, 741 [110 Cal.Rptr.2d 747]; *People v. Hawkins* (1975) 44 Cal.App.3d 958, 966 [119 Cal.Rptr. 54]; see *People v. Vickers* (1972) 8 Cal.3d 451, 461 [105 Cal.Rptr. 305, 503 P.2d 1313] ["summary termination . . . in the case of an absconding probationer comports with due process requirements if he is accorded a hearing . . . after being taken into custody"].)

The structure and spirit of Proposition 36 recognizes "that drug abusers often initially falter in their recovery." (*Taylor, supra,* 105 Cal.App.4th at p. 1397.) And one lapse is likely to result in multiple *grounds* for violating probation.

Consider the drug relapse equivalent of The Lost Weekend (Universal Studios 1945)—a long fall off the wagon that results in failure to attend a treatment class and missing a meeting with a probation officer. The probation officer promptly files a revocation petition for the missed meeting, and the trial court summarily revokes probation and issues a bench warrant. (See *People v. Hawkins, supra,* 44 Cal.App.3d 958.) In due course the officer receives a letter from the administrator of the treatment program, detailing the missed meeting, and the officer files a second petition. Eventually, the defendant is arrested and, because he is found while under the influence of drugs, a third petition is filed.

At a consolidated hearing, the petitions are sustained and the defendant is declared ineligible for Proposition 36 probation.

Under the Attorney General's view, because the People *moved* three times to revoke probation and because the grounds alleged in each petition were sustained after a hearing, the defendant in this example is properly excluded from further treatment under Proposition 36.

In our view, this result on the facts of this hypothetical is incompatible with the purpose of Proposition 36, that is, to recognize that relapses are common, indeed, almost inevitable. That is why the statute is structured to give the ordinary drug probationer three strikes, albeit with the possibility that the trial court will increase the intensity of the probation requirements with each relapse.

Thus, in our view, consistent with the purpose of Proposition 36, the requirement that the People must *move* three times encompasses the ordinary rule described above, that a motion, to be effectual *for purposes of having a disqualifying impact on the probationer*, must be *served* on the probationer. That way, the possibility or likelihood of losing Proposition 36 eligibility is brought home to him or her, providing an incentive to stop the errant behavior.

We are not the first court to view Proposition 36 in this way. *Tanner* involved two *petitions* which each alleged two *grounds* for revoking probation. Upon sustaining the first petition the trial court told Tanner he had used up all of his chances; when the second petition was sustained, the trial court found Tanner ineligible for further treatment under the Act because four "violations" had been found "and he 'only get[s] three.' " (*Tanner, supra,* 129 Cal.App.4th at pp. 227–229.)

*Tanner* interpreted Proposition 36, in the light of its stated purposes, to require "the state to make three noticed motions before a trial court can properly revoke probation . . . based solely upon drug-related violations of probation conditions." (*Tanner, supra,* 129 Cal.App.4th at p. 227.) "That the state is required to 'move' each time as a prerequisite to a finding of a violation of a drug-related condition of probation which may trigger revocation of probation under the Act is fully supported by the plain language of the statute and the fundamental rule of statutory construction that particular provisions or phrases should be interpreted so as not to render them superfluous or unnecessary. [Citations.] *Such interpretation also comports with the apparent purpose and intention behind Proposition 36 to give two chances to nonviolent drug offenders* who commit additional nonviolent drug possession offenses or violate drug-related probation conditions to reform before they are no longer eligible for probation under the Act." (*Tanner, supra,* at p. 236, italics added.) Thus, the number of individual grounds for revoking probation is not a critical factor.

*Tanner* continued, in a passage directly applicable to this case: "With regard to due process, we note that the Act and phrase in question are silent

on the exact procedure by which the state is to move to revoke probation, whether it be written or oral. We believe that consistent with the purpose of the Act, the trial court has the authority to consider the matters brought before it by the state and to revoke probation under the Act after it has been moved three separate times for violations of drug-related conditions of probation and those are proven or admitted *after three hearings.*" (*Tanner, supra*, 129 Cal.App.4th at p. 236, italics added.)

■ As we have indicated by our holding in *Budwiser, supra*, 140 Cal.App.4th 105, we do not believe three *temporally distinct* hearings are required. To that extent we depart slightly from the language just quoted from *Tanner, supra*, 129 Cal.App.4th at page 236. But where, as in this case, no notice of one petition is given *before the conduct underlying the next petition occurs*, although a consolidated hearing may be proper, it would be improper to treat the result as if the People had made separate noticed motions.

Had the trial court consolidated the petitions, as defendant requested, the court could have chosen to "intensify or alter" defendant's drug treatment plan (§ 1210.1, former subd. (e)(3)(B)), to help ensure defendant's last chance at probation would succeed, assuming defendant was willing to try. Defendant is entitled to three distinct periods of probation before he can be found ineligible (at least, based solely on *drug-related* violations). He had his initial period and the period after the November 2004 revocation. He is entitled to a third.

The People argue any error was harmless because defendant is not amenable to further treatment. This overlooks the fact that Judge Ruggiero explicitly found defendant *was* amenable, based on the evidence. The People fail to demonstrate that that finding lacks evidentiary support.[1]

---

[1] At oral argument defense counsel mentioned for the first time a recent legislative amendment to Proposition 36 that would allow some "three-strike" probationers to be eligible for reinstatement on probation. (Stats. 2006, ch. 63, § 7, eff. July 12, 2006.) Under the new statute, a repeat probation violator can be reinstated on probation even after "the state moves for a third or subsequent time" to revoke probation, if "the court determines that the defendant is not a danger to the community and would benefit from further treatment," in which case the trial court can intensify the treatment plan, including by imposing a jail term. (Pen. Code, § 1210.1, subd. (f)(3)(C), eff. July 12, 2006.)

The new statute cannot be applied in this case. First, by its terms the new statute "shall be applied prospectively." (Stats. 2006, ch. 63, § 9.) Second, enforcement of the statute has been enjoined by the Alameda County Superior Court. The injunction is based on the apparent fact that portions of the statute arguably thwart the intent of the People as expressed in Proposition 36. (*Gardner v. Schwarzenegger* (Super. Ct. Alameda County, 2006, No. RG06278911); see *People v. Hartley* (2007) 156 Cal.App.4th 859, 861, fn. 1 [67 Cal.Rptr.3d 667].)

## DISPOSITION

The judgment is reversed.

Sims, Acting P. J., and Robie, J., concurred.

On December 21, 2007, the opinion was modified to read as printed above.

## APPENDIX

Former portions of Penal Code Section 1210.1, as applicable in this case (Stats. 2001, ch. 721, § 3).

"(e)(3)(A) If a defendant receives probation under subdivision (a), and violates that probation either by committing a nonviolent drug possession offense, or a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210, or by violating a drug-related condition of probation, and the state moves to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others. If the court does not revoke probation, it may intensify or alter the drug treatment plan.

"(e)(3)(B) If a defendant receives probation under subdivision (a), and for the second time violates that probation either by committing a nonviolent drug possession offense, or a misdemeanor for simple possession or use of drugs or drug paraphernalia, being present where drugs are used, or failure to register as a drug offender, or any activity similar to those listed in paragraph (1) of subdivision (d) of Section 1210, or by violating a drug-related condition of probation, and the state moves for a second time to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court shall revoke probation if the alleged probation violation is proved and the state proves by a preponderance of the evidence either that the defendant poses a danger to the safety of others or is unamenable to drug treatment. In determining whether a defendant is unamenable to drug treatment, the court may consider, to the extent relevant, whether the defendant (i) has committed a serious violation of rules at the drug treatment program, (ii) has repeatedly committed violations of program rules that inhibit the defendant's ability to function in the program, or (iii) has continually refused to participate in the program or asked to be removed from the program. If the court does not revoke probation, it may intensify or alter the drug treatment plan.

"(e)(3)(C) If a defendant receives probation under subdivision (a), and for the third time violates that probation either by committing a nonviolent drug possession offense, or by violating a drug-related condition of probation, and the state moves for a third time to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. If the alleged probation violation is proved, the defendant is not eligible for continued probation under subdivision (a)."