[No. B161117. Second Dist., Div. Seven. Jan. 29, 2003.]

In re DAVID NISSAN MEHDIZADEH on Habeas Corpus.

**COUNSEL**

Michael P. Judge, Public Defender, Albert J. Menaster, Samuel Leonard and Alex Ricciardulli, Deputy Public Defenders, for Petitioner David Nissan Mehdizadeh.

Steve Cooley, District Attorney, Brentford J. Ferreira and Patricia Martinez, Deputy District Attorneys, for Respondent the People.

## OPINION

**JOHNSON, J.**—Petitioner David Nissan Mehdizadeh is a probationer covered by the drug treatment and rehabilitation provisions of Proposition 36 (Pen. Code, § 1210.1).[1] His petition for habeas corpus alleges the trial court acted unlawfully when it summarily revoked his probation and incarcerated him pending a formal hearing on alleged first time violations of drug-related conditions of his probation. He contends under Proposition 36 the trial court cannot revoke probation when a probationer violates a drug-related probation condition for the first time unless the court finds the probationer is a danger to society. In response the People argue Proposition 36 does not override the trial court's general discretion to revoke probation under section 1203.2.

Despite petitioner's release from custody, we issued an order to show cause why the trial court's order remanding petitioner pending his formal probation violation hearing was not unlawful. We did so because, even though petitioner's case is technically moot, it raises important questions concerning the application of Proposition 36, which would otherwise escape review due to the relatively short periods of incarceration involved.[2]

Although the meaning of Proposition 36 is not free from doubt, we believe petitioner has the stronger argument in contending probation cannot be revoked the first time a probationer violates a drug-related probation condition unless there is evidence the probationer poses a danger to society. However, even if the trial court had authority to summarily revoke petitioner's probation for a first time drug-related violation, the court abused its discretion in not releasing petitioner on his own recognizance pending the formal revocation hearing.

### FACTS AND PROCEEDINGS BELOW

The facts are not in dispute.

Following a court trial before Judge Kamins of the Los Angeles Superior Court, West Division, petitioner David Mehdizadeh was convicted of possession of a controlled substance, and sentenced in March 2001 to three years of formal probation on various terms and conditions including the condition he submit to periodic drug testing. Petitioner was on probation in July 2001 when Proposition 36 took effect.[3]

In August 2002 the Los Angeles County Probation Department submitted a supplemental probation report alleging petitioner was in violation of

---

[1] All statutory references are to the Penal Code.

[2] See *In re Law* (1973) 10 Cal.3d 21, 23 [109 Cal.Rptr. 573, 513 P.2d 621]; *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1218-1219 [26 Cal.Rptr.2d 623, 865 P.2d 56].

[3] The voters passed Proposition 36 in November 2000. In general, the law requires probation and drug treatment, not incarceration, for conviction of nonviolent drug possession

probation because he twice tested positive for cocaine, failed to appear for four other tests, failed to complete a substance abuse program and was behind in his payments on court-ordered restitution. The probation department did not, however, recommend petitioner's probation be revoked. Instead, the department recommended petitioner be found in violation of probation and the terms of his probation be modified to require him to enroll in and complete a residential substance abuse program.

The parties agree this was the first time the probation department had alleged petitioner violated the terms of his probation and they concur the violations were drug related.[4]

On August 30, petitioner appeared before Judge Barreto of the West District for a "probation revocation setting." It is not clear from the record whether petitioner was in custody or appeared voluntarily pursuant to notice. Judge Barreto appointed the public defender to represent petitioner. Upon reviewing the records of the case and the supplemental probation report Judge Barreto concluded "this matter needs to go to Judge Kamins because he is . . . very familiar with this matter, and I don't feel comfortable taking this one on from him because of the fact that he's been involved in it so much in the past." After determining Judge Kamins could hear the matter on September 6, 2002, Judge Barreto transferred the case to him for hearing on that day.

Judge Barreto then asked to hear from defense counsel "what reasons exist for the defendant not to be remanded into custody for violating probation." Counsel responded with two reasons. First, under Proposition 36 the court has to conduct a hearing before revoking probation.[5] The present proceeding was not the revocation hearing but only a proceeding to set the date for the revocation hearing. Without a revocation of probation petitioner could not be detained. Second, petitioner was not a flight risk. He had a family, including four children, and a job. At the hearing on the alleged violations he would show he had valid excuses for the tests he missed and the other tests were false positives. The prosecution argued petitioner should be remanded to custody pending the hearing because his explanations for the positive tests and the missed tests were "bogus."

After considering these arguments and the contents of the supplemental probation report Judge Barreto ordered petitioner's probation "summarily" revoked and ordered petitioner be held without bail pending the revocation hearing before Judge Kamins.

offenses. The law applies to persons such as petitioner who were on probation for a nonviolent drug possession offenses on July 1, 2001, the date the law took effect. (§ 1210.1, subd. (e)(3)(D).) Provisions governing revocation of probation are discussed below.

[4]Section 1210.1, subdivision (f) defines "drug-related condition of probation" as including "a probationer's specific drug treatment regimen."

[5]See section 1210.1, subdivision (e)(3)(A), (D) discussed below.

Later the same day petitioner filed a petition for writ of habeas corpus in this court contending he was being illegally detained under Judge Barreto's order. We directed the People to file and serve a response to the petition no later than September 9. On September 6 Judge Kamins released petitioner from custody on his own recognizance and rescheduled the probation violation hearing for later in October.

## DISCUSSION

Section 1210.1, subdivision (e)(3) applies to persons who violate the terms of their probation for nonviolent drug possession offenses.

Subdivision (e)(3)(A) and (D) of section 1210.1 are essentially identical in wording except that (A) applies to defendants who are placed on probation after the effective date of Proposition 36 and (D) applies to defendants who were already on probation when Proposition 36 became effective. Subdivision (e)(3)(D) states in relevant part: "If a defendant on probation at the effective date of this act for a nonviolent drug possession offense violates that probation . . . by violating a drug-related condition of probation, and the state moves to revoke probation, the court shall conduct a hearing to determine whether probation shall be revoked. The trial court *shall* revoke probation if the alleged probation violation is proved *and* the state proves by a preponderance of the evidence that the defendant poses a danger to the safety of others. *If the court does not revoke probation, it may modify probation and impose as an additional condition participation in a drug treatment program.*" (Italics added.)

Subsequent violations of drug-related probation conditions may result in revocation of probation under other provisions of section 1210.1. Subdivision (e)(3)(B) states: "If a defendant receives probation under subdivision (a), and for the *second* time violates that probation . . . [t]he trial court *shall* revoke probation if . . . the defendant poses a danger to the safety of others or is unamenable to drug treatment." (Italics added.) Subdivision (e)(3)(C) states: "If a defendant receives probation under subdivision (a), and for the *third* time violates that probation . . . the defendant is not eligible for continued probation under subdivision (a)." (Italics added.)

Thus, under Proposition 36 it appears a probationer gets "one bite at the apple," or perhaps more appropriately "one hit on the bong," before his or her probation can be revoked unless the People can prove by a preponderance of the evidence the probationer "poses a danger to the safety of others." Our colleagues in other districts have unanimously reached this conclusion.[6]

Over the years, California courts have adopted the practice in probation violation cases of revoking probation first and asking questions later. Thus,

---

[6]In an opinion by Justice Hollenhorst concurred in by Justices Ramirez and McKinster, Division Two of the Fourth District held the revocation standards of section 1210.1, subdivision (e)(3) are exclusive and supersede the general provisions of sections 1203.2 and

in the typical case probation is preliminarily revoked based on the trial court's finding of probable cause to believe the person has violated the terms of probation.[7] Following this summary revocation the person is entitled to a formal revocation hearing within a reasonable time at which he is entitled to the assistance of counsel, the opportunity to confront and cross-examine adverse witnesses, present his own witnesses and testify on his own behalf.[8] Between the summary revocation and the formal hearing the probationer may be held in custody or released on bail in the trial court's discretion.[9]

Postponing a hearing with full due process rights until the second stage of the revocation proceeding is permissible because at the first stage trial courts must at least make a determination there is probable cause to believe the probationers are in violation of their probation before probation is revoked and they are subject to a loss of liberty.[10]

In the case before us the trial court determined on the basis of the probation report there was probable cause to believe petitioner had violated his probation. Clearly sufficient evidence was presented to support this determination and petitioner does not challenge the trial court's finding of probable cause. If the foregoing interpretation of Proposition 36 is correct, however, it necessarily follows the trial court cannot summarily revoke probation and incarcerate a probationer the first time he or she violates a drug-related probation condition *unless* there is evidence in the probation report or otherwise establishing probable cause to believe the probationer "poses a danger to the safety of others."

Here the sole evidence before the trial court at the petitioner's "probable cause" determination was the supplemental probation report. The report listed four categories of violation, all of them drug-related:[11] two positive drug tests; four missed tests; failure to participate in a drug treatment program, and delinquent restitution payments.[12] There was no evidence before the court, through the probation officer's report or

1203.3. (*People v. Murillo* (2002) 102 Cal.App.4th 1414, 1418-1421 [126 Cal.Rptr.2d 358]; review den.) The Third District reached the same conclusion in an opinion by Justice Robie concurred in by Justices Nicholson and Blease. (*People v. Davis* (2003) 104 Cal.App.4th 1443, 1448 [129 Cal.Rptr.2d 48].)

[7] *People v. Coleman* (1975) 13 Cal.3d 867, 894 [120 Cal.Rptr. 384, 533 P.2d 1024].

[8] *People v. Vickers* (1972) 8 Cal.3d 451, 459-462 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People v. Santellanes* (1989) 216 Cal.App.3d 998, 1003 [265 Cal.Rptr. 281].

[9] Section 1272, subdivision 3.

[10] *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782 [93 S.Ct. 1756, 1759-1760, 36 L.Ed.2d 656]; *Morrissey v. Brewer* (1972) 408 U.S. 471, 485 [92 S.Ct. 2593, 2602, 33 L.Ed.2d 484]; and see *People v. Coleman, supra*, 13 Cal.3d at page 894; *People v. Vickers, supra*, 8 Cal.3d at pages 458-459.

[11] See footnote 4, *ante.*

[12] Because these payments included the cost of probation services in monitoring petitioner's compliance with the drug treatment conditions of probation we consider them to be "drug-related."

otherwise, suggesting petitioner posed a danger to society.[13] Nor did the court base its revocation order on that ground. The court stated: "Based upon the report showing . . . not only the two positive tests, but four missed tests, the court is well within its discretion to revoke probation summarily now and set the matter for probation violation hearing, and I do so." Given the interpretation of Proposition 36 discussed above,[14] petitioner argues the trial court erred in summarily revoking his probation and remanding him to custody.

The People offer four arguments in support of the trial court's summary revocation of petitioner's probation.

The People argue the trial court was permitted to briefly detain petitioner to determine whether section 1210.1 applied to him and whether he remained amenable to drug treatment. These determinations, the People assert, cannot be based on a "hasty first impression" the first time the case is before the court. In most cases, however, the applicability of section 1210.1 will appear from the court's file and the probation department's violation report. If not, the court can consider other evidence including evidence submitted by the People and the probationer. The issue of amenability to treatment is not before the court in a case involving a first time probation violation, which is the only situation we address in this opinion.[15]

The People further maintain unless the trial court can detain a person the court reasonably believes has violated the drug treatment provisions of her probation the court would be "require[d] . . . to release a transient probationer in possession of drugs who poses a high risk of flight from the jurisdiction prior to the determination of section 1210.1 eligibility." We do not find this argument persuasive.

Any probationer who is in possession of drugs in the courtroom can be arrested and detained on that ground; revoking probation would be unnecessary. Furthermore, if the trial court reasonably believes from the evidence the probationer poses a danger to society the court can summarily revoke probation and deal with the flight risk issue by imposing appropriate bail or remanding the probationer to custody without bail. If no evidence supports a reasonable belief the probationer is a danger to society the court can simply

---

[13]Where, as here, "revocation is based solely on the probation officer's report . . . the facts before the court are those alleged in the report. . . . [¶] [A]n order revoking probation is ineffective if the probation officer's report on which the court solely relies has no factual basis." *People v. Smith* (1970) 12 Cal.App.3d 621, 626-627 [90 Cal.Rptr. 811].

[14]See page 1000, *ante.*

[15]Compare section 1210.1, subdivision (e)(3) (A) and (D) with (B) and (E) and see section 1210.1, subdivision (c)(2) (revocation for unamenability to treatment) discussed at page 1003, *infra.*

order the probationer back to court for the formal probation violation hearing and, if he fails to appear, issue a bench warrant for his arrest.[16]

Admittedly, there is a nominal risk some probationers, if released, will not appear for their formal revocation hearings. Some might chose to flee the jurisdiction rather than be ordered into a residential drug treatment program. Of course, some probationers who know they are in violation of their drug-related probation conditions may not wait around to be arrested and brought before the court. In any event, since there is no reasonable likelihood probation will be revoked in the case of a first time violator who is not a threat to society, the probationer is no more a flight risk after the probable cause determination than before it.[17]

In a related vein, the People contend the trial court must be able to summarily revoke probation, when there is probable cause to believe a drug-related condition of probation has been violated, in order to toll the probation period and maintain jurisdiction over a defendant whose probationary term is about to expire.[18] We acknowledge a case occasionally may arise where a defendant whose probation time is almost up stops testing or tests positive and there is a danger the probation period may run out before a formal revocation proceeding can be held. We do not believe, however, summary revocation of probation is the only means available to avert this unintended result. Rather, in such a case the trial court could temporarily suspend the defendant's probation under its inherent power to preserve its jurisdiction.[19] The inherent power of a court to act "to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled."[20] We emphasize such a temporary suspension of probation may be used only to preserve the trial court's jurisdiction pending a formal revocation proceeding, not as a means to incarcerate the probationer for a first time drug-related probation violation.

---

[16]It could be argued evidence the probationer poses a risk to society might be developed between the time of the probable cause determination and the formal revocation hearing. At the summary revocation stage, however, the trial court is bound by the probation officer's report and other competent evidence before it. It cannot summarily revoke probation and incarcerate the probationer on the off chance something may turn up later to justify its actions. (*People v. Smith, supra,* 12 Cal.App.3d at pp. 626-628.)

[17]Because we were concerned over the risk of flight we asked the parties to submit supplemental briefs addressing the question whether the trial court has the power to detain a petitioner who appears to be a flight risk even if there appears to be no probable cause for summary revocation of probation under section 1210.1. Both parties responded the only way the trial court can remand the probationer to custody or require her to post bail pending the formal revocation hearing is by first summarily revoking probation.

[18]See *People v. Tapia* (2001) 91 Cal.App.4th 738, 741 [110 Cal.Rptr.2d 747]; *People v. DePaul* (1982) 137 Cal.App.3d 409, 412-413 [187 Cal.Rptr. 82].

[19]See Code of Civil Procedure section 128, subdivision (a)(5); *People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 538 [72 Cal.Rptr. 790, 446 P.2d 790].

[20]*Local Loan Co. v. Hunt* (1934) 292 U.S. 234, 239 [54 S.Ct. 695].

Finally, the People contend section 1210.1 does not supercede the trial court's general power to revoke probation under section 1203.2, subdivision (a) "if the interests of justice so require."

In support of this argument the People point to section 1210.1, subdivision (c)(2), which gives the trial court the power to revoke probation any time the probationer proves to be "unamenable" to drug treatment notwithstanding the provisions of subdivision (e)(3).[21] Subdivision (c)(2), however, comes nowhere near giving the trial court the broad power to revoke probation whenever the court deems revocation to be in "the interests of justice." It is true subdivision (c)(2) could apply to a first time drug-related violation of probation. In fact it could apply even if there has been no violation of probation. But before probation can be revoked under subdivision (c)(2) the drug treatment provider must notify the probation department the proba-tioner "is unamenable to the drug treatment provided and all other forms of drug treatment programs" and the probation department must move to revoke probation on that ground. Thus the trial court's authority to revoke probation under subdivision (c)(2) only arises under a narrowly circum-scribed set of conditions.[22] Rather than support the People's argument, subdivision (c)(2) helps refute it.

The People further maintain subdivision (e)(3)(A) and (D) describes the circumstance in which the trial court must revoke probation but does not explicitly limit the court's power by stating probation cannot be revoked under any other circumstance. The drafters of Proposition 36 knew how to exclude the application of other sentencing statutes when they wanted to do so. For example, section 1210.1, subdivision (a) states: "Notwithstanding any other provision of law, and except as provided in subdivision (b), any person convicted of a nonviolent drug possession offense shall receive probation." ▄ The drafters did not employ the phrase "notwithstanding any other law" preceding the revocation provisions of subdivision (e)(3) nor did they limit the trial court's revocation power such as by stating the trial court shall revoke probation "only if" the defendant poses a danger to the safety of others.[23] Consequently, in the People's view, subdivision (e)(3)(A) and (D) sets forth what the trial court must do in

---

[21]Subdivision (c)(2) states: "If at any point during the course of drug treatment the treatment provider notifies the probation department that the defendant is unamenable to the drug treatment provided and all other forms of drug treatment . . . , the probation department may move to revoke probation. At the revocation hearing, if it is proved that the defendant is unamenable to all drug treatment programs . . . , the court may revoke probation."

[22]In the present case the probation department did not move to revoke petitioner's proba-tion based on unamenability to treatment. On the contrary, the department recommended the terms of petitioner's probation be modified to require him to submit to a residential substance abuse treatment program.

[23]We note at one time a bill to amend section 1210.1 contained this very language. (Sen. Bill No. 223 (2001-2002 Reg. Sess.) § 3, as amended April 5, 2001.) The language was

certain circumstances, e.g., revoke probation if the defendant is a threat to society, but does not limit what the court may otherwise do in all remaining circumstances.

Moreover, as the People correctly observe, California appellate courts have long interpreted section 1203.2, subdivision (a) "as conferring great flexibility upon judges making the probation revocation determination."[24] Indeed, the discretionary power to revoke probation in "the interest of justice" has been statutory law for at least the last 100 years.[25] This discretion should not be disturbed, the People insist, unless the drafters of Proposition 36 made that intent explicit.[26] Repeal by implication is disfavored "particularly when, as here, the statute allegedly repealed expresses a legal principle that has been a part of our penal jurisprudence for over a century."[27] Because there is no explicit language in section 1210.1 expressing an intent to override the trial courts' century-old discretion under section 1203.2 to revoke probation in the interest of justice, the People argue, we should not infer one.

The Supreme Court, however, has never prescribed any "magic words" the Legislature or the electorate must use to make their purposes explicit. Several provisions of Proposition 36 arguably express the electorate's intent in adopting the initiative to supercede the trial courts' broad powers to revoke the probation of those covered by the initiative.

Section 3 of the initiative states its "purpose and intent" is threefold: "[t]o *divert from incarceration* into community-based substance abuse treatment programs nonviolent defendants, *probationers*, and parolees charged with simple drug possession or drug use offenses; [¶] . . . [t]o halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration—*and reincarceration*—of nonviolent drug users who would be better served by community-based treatment; and [¶] . . . [t]o enhance public safety by reducing drug-related crime and *preserving jails and prison cells*

---

subsequently dropped from the bill and was not included in the chaptered version. (Sen. Bill No. 223, (2001-2002 Reg. Sess.) § 3, as amended May 15, 2001; Stats. 2001, ch. 721, § 3.) "The rejection of a specific provision contained in an act as originally introduced is 'most persuasive' that the act should not be interpreted to include what was left out." (*Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848], citations omitted.) The legislative history of Senate Bill No. 223 is less persuasive, however. Proposition 36 was the "original act" and there is no evidence the "only if" language was ever included in a draft of Proposition 36 itself. Senate Bill No. 223 was a legislative attempt to clarify some of the provisions of Proposition 36 and even so the "only if" language was not part of the bill as originally introduced. It appeared in an amendment to the bill one month and the next month it was gone. Under these circumstances we find the legislative history of Senate Bill No. 223 to be of little value in interpreting the provisions of section 1210.1.

[24]*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 [272 Cal.Rptr. 613, 795 P.2d 783].

[25]Statues 1903, chapter 34, section 1, pages 34-35.

[26] See *People v. Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294].

[27]*People v. Siko, supra*, 45 Cal.3d at page 824.

*for serious and violent offenders . . . ."* (Italics added.) As previously noted, section 1210.1, subdivision (a) provides: *"Notwithstanding any other provision of law . . .* any person convicted of a nonviolent drug possession offense *shall receive probation."* (Italics added.) And finally, section 1210.1, subdivision (e)(1) states: *"If* probation is revoked pursuant to the provisions of this subdivision, the defendant may be incarcerated pursuant to otherwise applicable law without regard to the provisions of this section. (Italics added.) All three provisions indicate an intention to treat nonviolent drug offenders as a separate class subject only to the special probation rules of section 1210.1.

In addition, section 1210.1, subdivision (e)(3)(A) and (D) states probation may only be revoked if "the state moves to revoke probation." This language appears to eliminate the trial court's power to revoke probation on its own motion as provided by section 1203.2, subdivisions (a) and (b).

It is also worthwhile noting that in explaining the provisions of the initiative the Legislative Analyst stated, with respect to "sanctions," a defendant sentenced "to participate in a drug treatment program under this measure would *only be subject to certain sanctions* if it were determined that he or she was unamenable to treatment or had violated a condition of probation." These sanctions include "being moved to an alternative or more intense form of drug treatment, revocation of probation, and incarceration in prison or jail."[28]

Finally, other fundamental rules of statutory construction seem more pertinent to our inquiry into the intent of Proposition 36 than those cited by the People. ■ Wherever reasonably possible, courts will avoid statutory constructions which "render particular provisions superfluous or unnecessary"[29] or defeat " ' "the apparent purpose and intention" ' " behind them.[30]

■ As we explained above,[31] section 1210.1, subdivision (e)(3) sets out a detailed system of escalating sanctions for drug-related violations of probation by defendants. For the first violation there can be no revocation of probation unless the People prove by a preponderance of the evidence the defendant is a threat to the safety of others. Instead, the trial court can retain the current drug treatment program or intensify or alter the drug treatment plan.[32] For a second violation there can be no revocation of probation unless it is proved the defendant is a threat to the safety of others or is unamenable

---

[28]Ballot pamphlet, General Election (Nov. 7, 2000) analysis of Proposition 36 by the Legislative Analyst, page 24. (Italics added.)

[29]*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063].

[30]*Anaheim Union Water Co. v. Franchise Tax Bd.* (1972) 26 Cal.App.3d 95, 105 [102 Cal.Rptr. 692].

[31]See pages 999-1000, *ante.*

[32]Section 1210.1, subdivision (e)(3)(A), (D).

to drug treatment.[33] If the probationer violates probation a third time probation must be revoked.[34]

If the trial courts retained their general discretion to revoke probation according to their views of "the interests of justice" the escalating system of sanctions called for by Proposition 36 would be swept away and the law would be the same as it was before the electorate spoke in the year 2000 general election. It is problematic whether even the "mandatory" revocation provisions of subdivision (e) would survive.

Under the better reasoned view, probationers subject to Proposition 36 can only have their probation revoked in accordance with the terms of section 1210.1, subdivision (e)(3). Thus, when the evidence before the trial court shows the person is covered by Proposition 36, the alleged probation violations are "drug-related," and the person has not previously been found in violation of probation, the court cannot summarily revoke probation and subject the probationer to a loss of liberty unless the court has probable cause from the report of the probation officer or otherwise to believe the probationer poses a danger to society.

In the alternative, we hold even if petitioner was subject to summary revocation of his probation under section 1203.2, the trial court abused its discretion in remanding him to custody pending his formal revocation hearing. For the reasons we explain below, unless there is evidence the probationer poses a threat to the public or a risk of flight it is an abuse of discretion to deny him own recognizance release pending the formal revocation proceeding. Even if the defendant poses a flight risk, incarceration should be avoided if there is a less restrictive alternative.

Persons charged with probation violations are subject to the same bail statutes as persons charged with crimes.[35] A person on probation for a misdemeanor conviction "shall be entitled to an own recognizance release unless [such release] will compromise public safety or will not reasonably assure the appearance of the defendant as required."[36] A person on probation for a felony nonviolent drug possession conviction also may be granted own recognizance release.[37] Although there are no statutory standards for "OR" release in felony cases involving nonviolent drug possession, the standards set forth in section 1275, subdivision (a) are appropriate. Under this statute the trial court, in setting, reducing, or denying bail, is instructed to consider "the protection of the public, the seriousness of the offense charged, the

---

[33]Section 1210.1, subdivision (e)(3)(B), (E).
[34]Section 1210, subdivision (e)(3)(C), (F).
[35]Section 1272.
[36]Section 1270, subdivision (a).
[37]California Constitution, article I, section 12.

previous criminal record of the defendant and the probability of his or her appearing at trial or hearing of the case." Of these considerations, "public safety shall be the primary consideration."

In the case of a probationer covered by Proposition 36, the seriousness of the offense and any previous criminal record have already been considered in granting probation.[38] Therefore, given the minor nature of the probationer's crime and lack of recidivism it is an abuse of discretion not to release the probationer on his or her own recognizance unless the probationer poses a danger to society or a risk of flight. In the latter case, the trial court should consider alternatives to incarceration pending the formal revocation hearing. In addition to the obvious alternative of setting bail, the court should consider ordering the probationer to enter a residential treatment facility where his presence will be monitored or placing the probationer under home restriction.

Counsel for petitioner asserts trial courts in Los Angeles County are denying bail and incarcerating Proposition 36 probationers pending formal revocation proceedings as a kind of "shock therapy," in the hope a short time in jail will convince those convicted of minor drug possession crimes to change their ways before they commit more serious drug offenses. Counsel has not submitted any evidence to back up this claim and we do not find it as a fact. Trial courts should bear in mind, however, the purpose of bail or its denial is not to punish or "shock" the alleged offender but to protect the public and assure his or her presence in court when required.[39]

In the present case the People presented no evidence petitioner posed a danger to the safety of others and did not make a sufficient showing petitioner was a flight risk. Therefore, even if the trial court had authority to summarily revoke petitioner's probation under section 1203.2 it abused its discretion in remanding him to custody pending a formal revocation hearing.

### DISPOSITION

The order to show cause, having served its purpose, is discharged. The petitioner no longer being held in custody, the writ is denied.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied February 27, 2003, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 21, 2003.

---

[38]Section 1210.1, subdivisions (a), (b).

[39]Sections 1270, subdivision (a), 1275, subdivision (a); *In re Underwood* (1973) 9 Cal.3d 345, 348 [107 Cal.Rptr. 401, 508 P.2d 721].