145 P.3d 751

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Rodney A. HERBERT, Defendant–Appellant.**

**No. 26771.**

Intermediate Court of Appeals of Hawai'i.

June 29, 2006.

Matthew S. Kohm, Wailuku, on the briefs, for Defendant–Appellant.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, County of Mauʻi, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., FOLEY and NAKAMURA, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Rodney A. Herbert (Herbert) appeals from the Order of Resentencing/Revocation of Probation filed on July 23, 2004 in the Circuit Court of the Second Circuit (circuit court).[1] As points of error, Herbert contends the circuit court erred when it granted on August 11, 2004 the Order Revoking Probation and Resentencing Defendant and denied on August 12, 2004 Herbert's Ex–Parte Motion for an Extension of Time to File a Notice of Appeal.

On October 16, 2003, Herbert entered no contest pleas to Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712–1243(1) (1993 & Supp.2001), and Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993). The cir-

cuit court sentenced Herbert to five years of probation on each count pursuant to Act 161 (HRS § 706–622.5 (Supp.2003))[2] and ordered Herbert to pay a crime victim compensation fee of $400.00 and a probation services fee of $150.00. On July 23, 2004, the circuit court revoked Herbert's probation and resentenced him to a five-year term of incarceration on each count, said terms to run concurrently, with credit for time served.

On appeal, Herbert argues the circuit court (1) may not revoke probation for a first violation where the probationer has been sentenced under HRS § 706–625(7) (Supp. 2003),[3] (2) should have held an evidentiary hearing before revoking his probation, and (3) should have granted his motion to extend time for filing the notice of appeal.

---

1. The Honorable Joel E. August presided.

2. In 2003, Hawaii Revised Statutes (HRS) § 706–622.5 (Supp.2003) provided in relevant part:

 **§ 706–622.5 Sentencing for first-time drug offenders; expungement.** (1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5, who is nonviolent, as determined by the court after reviewing the:
 (a) Criminal history of the defendant;
 (b) Factual circumstances of the offense for which the defendant is being sentenced; and
 (c) Other information deemed relevant by the court;
 shall be sentenced in accordance with subsection (2); provided that the person does not have a conviction for any violent felony for five years immediately preceding the date of commission of the offense for which the defendant is being sentenced.
 (2) A person eligible under subsection (1) shall be sentenced to probation to undergo and complete a drug treatment program. If the person fails to complete the drug treatment program and if no other suitable treatment is amenable to the offender, the person shall be returned to court and subject to sentencing under the applicable section under this part. As a condition of probation under this subsection, the court shall require an assessment as

 to the treatment needs of the defendant, conducted by a person certified by the department of health to conduct the assessments. The drug treatment program for the defendant shall be based upon the assessment. The court may require the person to contribute to the cost of the drug treatment program.

3. In 2003, HRS § 706–625 (Supp.2003) provided in relevant part:

 **§ 706–625 Revocation, modification of probation conditions.** (1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation except as provided in subsection (7), reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627.
 . . . .
 (7) Probation shall not be revoked for a first violation of the terms and conditions of probation involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5; provided that the person shall be required to undergo and complete a drug treatment program as a condition of continued probation. If the person fails to complete the drug treatment program and if no other suitable treatment is amenable to the offender, the person shall be subject to revocation of probation and return to incarceration. The court may require the person to contribute to the cost of the drug treatment program.

We vacate and remand, but for reasons not articulated by Herbert.

## I.

By indictment filed on July 16, 2001, the State of Hawai'i (the State) charged Herbert with one count of Promoting a Dangerous Drug in the Third Degree and one count of Prohibited Acts Related to Drug Paraphernalia. On October 16, 2003, Herbert entered no contest pleas to both charges. In exchange for Herbert's no contest pleas, the State agreed that the circuit court should sentence Herbert pursuant to HRS § 706–622.5. After Herbert entered his pleas, the circuit court proceeded to sentencing. The circuit court sentenced Herbert to five years of probation on each count (to run concurrently), subject to seven terms and conditions (conditions 1–7) and additional special terms and conditions (special conditions A–M).

On February 13, 2004, the State filed a Motion for an Order to Show Cause and Issuance of a Warrant of Arrest (Motion for OSC). The State claimed Herbert violated the following conditions of his probation:

2) You must report to a probation officer as directed by the court or the probation officer.

4) You must notify a probation officer prior to any change in address or employment.

The State also claimed Herbert violated the following special conditions:

G) You must submit to drug/alcohol assessments throughout your period of probation as directed by the Adult Client Services Branch and, if deemed necessary, seek and maintain outpatient and/or residential drug/alcohol treatment until clinically discharged with the concurrence of the Adult Client Services Branch.

L) You must pay the Crime Victim Compensation Fee ($400.00) and the Probation Service Fee ($150.00) at a rate of not less than $25.00 per month beginning in December 2003. Payments shall be applied to the foregoing obligations in the same order as they are listed herein. Any modifications in the manner of payment must be approved by the court.

On July 14, 2004, Herbert appeared before the circuit court for a hearing on the Motion for OSC. At the outset, Herbert's attorney advised the court that he had "reviewed the violation report with Mr. Herbert, gone over the violations and [Mr. Herbert] is prepared this morning to waive his right to a hearing and have this matter resolved this morning with admissions or stipulation to the OSC." The circuit court reconfirmed Herbert's intention directly:

[THE COURT:] Mr. Herbert, your attorney is indicating that you are intending this morning to give up your right to have a hearing and force the State to prove the truthfulness of certain allegations which were contained in a violation report and an order to show cause that relates to your failure to comply with certain terms and conditions of probation that you were on relating to [this case], which had two counts, promoting a dangerous drug in the third degree and prohibited acts related to drug paraphernalia. Those are Class C felonies. You were originally eligible to be sentenced—since those are two felonies, you would be eligible for extended sentencing. You could have been sentenced originally to up to 20 years of incarceration in this matter, and instead, you were given probation. Are you aware of all that?

[Herbert]: Yes, Your Honor.

The circuit court then engaged Herbert in an on-the-record colloquy to ensure that he had a full understanding of the admissions and the consequences. Herbert admitted violating conditions 2 and 4 and special conditions G and L. The circuit court concluded:

THE COURT: Well, the Court is going to find that the terms and conditions of probation which were violated were material terms and conditions of the probation and that they were violated without any justification, reasonable justification that the Court can determine. The Court is going to find that Mr. Herbert is knowingly, intelligently and voluntarily and with the advice of counsel admitting to these violations and that he is doing so without

any coercion of any sort, without any promises having been made and is going to accept his admissions and find that the allegations are true on the basis of that.

There being no appropriate justification for his failure to comply, the Court is going to now deal with the issue of the ramifications of that.

As to the ramifications of Herbert's violations, the circuit court and the State initially did not agree as to the application of HRS § 706–625(7) to Herbert's probation violations. The circuit court initially understood HRS § 706–625(7) to mean that "if the violation is somehow related to the use of drugs or possession of drug paraphernalia, things that relate to the substance abuse of the individual which was the justification for sentencing under 161 [HRS § 706–622.5] to begin with," the circuit court was not free to revoke and resentence Herbert. The circuit court stated that Herbert's failure to obtain a drug assessment (condition 4) related to the use of drugs.

The State argued HRS § 706–625(7) meant that the violation must be one whereby Herbert actually used or possessed drugs during his probation. Since none of the violations pertained to Herbert's actually using or possessing drugs, the State contended HRS § 706–625(7) did not apply and the circuit court was free to revoke Herbert's probation and resentence him under HRS § 706–625(1). Over Herbert's objection, the circuit court granted the State an opportunity to submit a brief addressing this issue and continued Herbert's resentencing to July 23, 2004.

On July 20, 2004, the State submitted a Sentencing Memorandum. On July 23, 2004, Herbert appeared before the court to continue the resentencing hearing. After hearing arguments from both Herbert's attorney and the State, the circuit court agreed with the State's interpretation of HRS § 706–625(7):

THE COURT: Based on the State's analysis if, in fact, the violation had been that he had been caught with or found with or had admitted to after testing use of an unprescribed drug or substance or had been found with or admitted to possessing drug paraphernalia, then I think, quite frankly, under the wording as I read it of Section 7 [sic], the Court's hands, at least under the old act, under Act 161, the Court's hands would be tied.

The circuit court revoked Herbert's probation and resentenced him to two concurrent five-year terms of incarceration. The circuit court issued an Order of Resentencing/Revocation of Probation on July 23, 2004. On August 11, 2004, the circuit court filed its Order Revoking Probation and Resentencing Defendant, setting forth the court's reasons for revoking Herbert's probation.

On August 12, 2004, the circuit court denied Herbert's Ex–Parte Motion for an Extension of Time to File a Notice of Appeal. On August 23, 2004, Herbert timely filed his Notice of Appeal.

## II.

### A. Statutory Interpretation

■■■ The interpretation of a statute is a question of law that we review *de novo*. Similarly, a trial court's conclusions of law are reviewable *de novo* under the right/wrong standard. Under the *de novo* standard, this court must examine the facts and answer the pertinent question of law without being required to give any weight or deference to the trial court's answer to the question. In other words, we are free to review a trial court's conclusion of law for its correctness.

*State v. Kelekolio,* 94 Hawai'i 354, 356, 14 P.3d 364, 366 (App.2000) (citations omitted).

■■■ The Hawai'i Supreme Court has repeatedly stated that, when interpreting a statute, an appellate court's

foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning.

*State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks, citations, and brackets in original omitted).

## B. Sentencing

 "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *Barnett v. State*, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999) (quoting *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998)).

 In other words,

> while a sentence may be authorized by a constitutionally valid statute, its imposition may be reviewed for plain and manifest abuse of discretion.
>
> Admittedly, the determination of the existence of clear abuse is a matter which is not free from difficulty, and each case in which abuse is claimed must be adjudged according to its own peculiar circumstances. Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 688 (1990).

*State v. Gaylord*, 78 Hawai'i 127, 144, 890 P.2d 1167, 1184 (1995) (brackets omitted); *see State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000).

## III.

Section 1 of Act 161 (which enacted HRS §§ 706–622.5 and 706–625) reads in part as follows:

> SECTION 1. The legislature finds that drug abuse is a serious problem in the State of Hawaii, and current policies and practices in the criminal justice system, have not adequately addressed the issue. Hawaii's criminal justice system requires a major shift in philosophy to deal with the needs of drug offenders by requiring nonviolent drug possession offenders to participate in community-based supervision and treatment, instead of incarceration.

\* \* \*

Arizona (Proposition 200, 1996) and California (Proposition 36, 2000) have passed initiatives providing for mandatory community supervision of nonviolent drug possession offenders, with substance abuse treatment requirements. These measures change state law so that certain drug offenders who use or possess illegal drugs would receive drug treatment and supervision in the community, rather than being sent to prison or jail or supervision in the community without treatment.

Representing a shift in philosophy from a criminal justice model of controlling drug use to a public health model based on harm reduction, the Arizona and California initiatives received substantial support from the voters, garnering approximately two-thirds of the votes. The goal of harm reduction measures is found in California's Proposition 36, "Purpose and Intent" section:

> (1) To divert from incarceration into community-based substance abuse treatment program nonviolent defendants, probationers, and parolees charged with simple drug possession or drug use offenses;
>
> (2) To halt the wasteful expenditure of hundreds of millions of dollars each year on the incarceration of nonviolent drug possession defendants who would be better served by community-based treatment;
>
> (3) To enhance public safety by reducing drug-related crime and preserving jails and prison cells for serious and violent offenders, and to improve public health by reducing drug abuse and drug dependence through proven and effective drug treatment strategies.

The measure excludes certain offenders from its provisions, such as those who refuse treatment, have failed drug treatment two or more times, or were convicted in the same criminal proceeding of a non-drug use misdemeanor or felony.

The California legislative analyst provided an overview of Proposition 36 for the voters and included a summary of fiscal

effects. The reports [sic] states, "This measure is likely to result in net savings to the state after several years of between $100 and $150,000,000 annually due primarily to lower costs for prison operations. Assuming the inmate population growth would have otherwise continued, the state would also be able to delay the construction of additional prison beds for a one-time cost avoidance of capital outlay costs between $450,000,000 and $550,000,000 in the long term. Counties would probably experience net savings of about $4,000,000 annually due primarily to lower jail population."

The defining strength of the Arizona Justice Model is the incorporation of a continuum of "best practice" services as opposed to the reliance on a single program intervention. The designed continuum of care service delivery system comprises substance abuse education programming for the low-risk offender, standard and intensive outpatient programming for the medium- to low-risk offender, and day treatment, short-term and long-term residential treatment for the high risk offender. This service delivery continuum is based on the assessment and matching process that is critical in the effort to maximize positive client outcomes and the effective use of funding, time, and resources.

The purpose of this Act is to require first time non-violent drug offenders, including probation and parole violators, to be sentenced to undergo and complete drug treatment instead of incarceration. 2002 Haw. Sess. L. Act 161, § 1 at 568 & 570–71.

■ Act 161 affords nonviolent substance abusers to continue on probation

for a first violation of the terms and conditions of probation involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5; provided that the person shall be

required to undergo and complete a drug treatment program as a condition of continued probation.

HRS § 706–625(7) (Supp.2003). However, "[i]f the person fails to complete the drug treatment program and if no other suitable treatment is amenable to the offender, the person shall be subject to revocation of probation and return to incarceration." *Id.*

By the same token, however, Act 161 does not extend the same opportunity to a person on probation who violates the terms and conditions of probation that do not involve possession or use of drugs or drug paraphernalia. The court has discretion to incarcerate that person.

■ The question before us is whether Herbert's violation of his terms and conditions of probation involved possession or use of drugs as meant under HRS § 706–625(7). Herbert's violations of his terms and conditions of probation consisted of failing to report to his probation officer as directed, failing to notify his probation officer of any change in address, failing to submit to a drug/alcohol assessment as directed, and failing to pay the crime victim compensation and probation service fees. Herbert argues that the phrase "involving possession or use" of drugs refers to the underlying crime for which he was originally sentenced to probation. Conversely, the State argues that the phrase refers to the possession or use of drugs by Herbert while on probation.

In revoking Herbert's probation and sentencing him to prison, the circuit court stated, in part, on July 23, 2004:

[THE COURT:] Now, I don't think here we're dealing with a situation where Mr. Herbert is alleged to have been convicted of a new crime. I think the allegation that he has admitted to, the allegations have to do with, at some point, stopping to report to his probation officer, of not getting an assessment that he was ordered to be assessed, and seek and maintain outpatient or residential treatment that might be recommended as a result of the assessment.

There's no allegation, as I understand it, alleged in the motion for order to show

cause or in the violation report, excuse me, or do we have any evidence on the record that, in fact, the defendant was found with or was using any unprescribed substance or drug paraphernalia? It certainly was one of the conditions of his terms and conditions of probation, but it was not one which he was alleged to have violated.

. . . .

THE COURT: Based on the State's analysis if, in fact, the violation had been

that he had been caught with or found with or had admitted to after testing use of an unprescribed drug or substance or had been found with or admitted to possessing drug paraphernalia, then I think, quite frankly, under the wording as I read it of Section 7, the Court's hands, at least under the old act, under Act 161, the Court's hands would be tied.

Under the new act, Act 44,[4] quite frankly, what's happened is the courts

4. Act 44, §§ 11 and 12, of the 2004 Hawai'i Legislature amended HRS §§ 706–622.5(1) and (2) and 706–625(7) to read as follows:

§ 706–622.5 Sentencing for first-time drug offenders; expungement. (1) Notwithstanding section 706–620(3), a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, unlawful methamphetamine trafficking as provided in section 712–1240.6, or involving possession or use of drug paraphernalia under section 329–43.5, is eligible to be sentenced to probation under subsection (2) if the person meets the following criteria:

(a) The court has determined that the person is nonviolent after reviewing the person's criminal history, the factual circumstances of the offense for which the person is being sentenced, and any other relevant information;

(b) The person has been assessed by a certified substance abuse counselor to be in need of substance abuse treatment due to dependency or abuse under the applicable Diagnostic and Statistical Manual and Addiction Severity Index; and

(c) Except for those persons directed to substance abuse treatment under the supervision of the drug court, the person presents a proposal to receive substance abuse treatment in accordance with the treatment plan prepared by a certified substance abuse counselor through a substance abuse treatment program that includes an identified source of payment for the treatment program.

(2) A person eligible under subsection (1) may be sentenced to probation to undergo and complete a substance abuse treatment program if the court determines that the person can benefit from substance abuse treatment and, notwithstanding that the person would be subject to sentencing as a repeat offender under section 706–606.5, the person should not be incarcerated in order to protect the public. If the person fails to complete the substance abuse treatment program and the court deter-

mines that the person cannot benefit from any other suitable substance abuse treatment program, the person shall be subject to sentencing under the applicable section under this part. As a condition of probation under this subsection, the court may direct the person to undergo and complete substance abuse treatment under the supervision of the drug court if the person has a history of relapse in treatment programs. The court may require other terms and conditions of probation, including requiring that the person contribute to the cost of the substance abuse treatment program and comply with deadlines for entering into the substance abuse treatment program.

§ 706–625 Revocation, modification of probation conditions.

. . . .

(7) The court may require a defendant to undergo and complete a substance abuse treatment program when the defendant has committed a violation of the terms and conditions of probation involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, unlawful methamphetamine trafficking as provided in section 712–1240.6, or involving possession or use of drug paraphernalia under section 329–43.5. If the defendant fails to complete the substance abuse treatment program or the court determines that the defendant cannot benefit from any other suitable substance abuse treatment program, the defendant shall be subject to revocation of probation and incarceration. The court may require the defendant to:

(a) Be assessed by a certified substance abuse counselor for substance abuse dependency or abuse under the applicable Diagnostic and Statistical Manual and Addiction Severity Index;

(b) Present a proposal to receive substance abuse treatment in accordance with the treatment plan prepared by a certified substance abuse counselor through a substance abuse treatment program that includes an identified source of payment for the treatment program;

have been given more discretion and the Court, even if the Court finds that it is the first violation, under the new act, is not required to sentence somebody to probation. Strangely enough.

. . . .

THE COURT: What's happened in the new act, strangely enough, as I've been analyzing it, is they have taken out the word shall and they've put the word may when it comes to the issue of whether the Court has to sentence somebody to probation simply for possession.

Why the legislature sure has done that, I don't know, because I'm not familiar, quite frankly, with what the legislature exactly was concerned about before. But we're going under the old. We're going under 161. I don't intend to impose on him the requirements of the old law that, you know—excuse me, of the new law which was not in place at the time that he was found guilty. I think that would raise some significant problems.

I think we're strictly dealing here with the issue of did this—was it the—it is clear from 706-625, that if the violation is for something other than possession or use, is the Court bound by this admonition that it shall not revoke for first violation? Quite frankly, at this point the Court feels that having read this again, after [the deputy prosecuting attorney's] analysis, that there is no ambiguity in this.

In other words, if it's something other than—if the violation is something other than possession or use, and I think that in terms of looking at the consistency of that position with the intent of the law to the extent that we even get into that, there seems to be an acknowledgment in the act itself that the struggle with drugs is a very difficult one and that people will relapse

and you start and continue to use drugs even after they have made an attempt at rehabilitation.

Certainly, that's the experience of the Court, but I'm talking about what the language is in the law and what it did not want to do was to punish people for simple relapses. In other words, of using again.

That if we get into the legislative intent talking about 161, I think that that's what they were concerned about and in some sense acknowledging the realities of how difficult it is to kick the drug habit.

* * *

THE COURT: ... Where we left off was the issue about the application—if the Court—the Court, I will indicate, is inclined to follow the interpretation which has been of this particular section. By that I'm talking about 706–625, Subsection 7, interpretation has been presented by the State with regard to the limited circumstances under which the Court should not revoke first time violation of terms and conditions of probation in Act 161 cases.

* * *

The overall, I think purpose and intent of both Act 161 and Act 44 is to the extent that people come within the benefits of it receive treatment and rehabilitation and, you know, we're dealing with a situation where the individual has not taken advantage of the probationary opportunities which were available to get assessed and get treated.

The Court's feeling is in general that the Court would find that this is ameliorative in nature. That the removal of such is ameliorative, and the Court is not, quite frankly, required to impose a mandatory

---

(c) Contribute to the cost of the substance abuse treatment program; and
(d) Comply with any other terms and conditions of probation.
As used in this subsection, "substance abuse treatment program" means drug or substance abuse treatment services provided outside a correctional facility by a public, private, or nonprofit entity that specializes in treating persons who are diagnosed with substance abuse or dependency and preferably employs li-

censed professionals or certified substance abuse counselors.
Nothing in this subsection shall be construed to give rise to a cause of action against the State, a state employee, or a treatment provider.
Act 44 did "not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date" of July 1, 2004. 2004 Haw. Sess. L. Act 44, § 29 at 227.

minimum. It may not make a difference one way or another because, quite frankly, if the Court is going to do what the Court is inclined to do, which is to sentence—not sentence the defendant to a new term of probation, but sentence the defendant to a term of incarceration of five years, and I believe that there are two concurrent—well, there are two terms of five years in the underlying case.

The Court's inclination at this point is to sentence him to two five year terms of incarceration, to run concurrently with credit for time served, and to not set a mandatory minimum and strongly recommend to the Paroling Authority that this defendant be programmed such that he is required to take advantage of the opportunity of the Cash Box program or any other program which the Department of Public Safety may have in place in its facilities to permit him to participate in a program which will allow him to and require him to address his substance abuse problems.

(Footnote added.)

Act 161 on its face does not define the phrase "involving possession or use" of drugs. HRS § 706–625(7). This language was adopted in the final version of S.B. No. 1188, S.D.2, H.D.2, C.D.1 (which became Act 161), Section 5. Prior drafts had used the language "drug related probation condition" adopted from the language of the California statute cited in Section 1 of Act 161, as quoted previously.

The change of language from "drug related probation condition" to "terms and conditions of probation involving possession or use" of drugs does not appear to have intended any substantive change. The conference committee report stated this phrase required "[t]he court not to revoke probation for the first violation of a nonviolent drug-related probation condition." Sen. Conf. Comm. Rep. No. 96, in 2002 Senate Journal, at 986.

Because the language of HRS § 706–625(7) was modeled after the California Act cited in Act 161, we look to the California statute and case law for guidance. *State v. Ontai*, 84 Hawai'i 56, 61, 929 P.2d 69, 74 (1996). The California statute defines the term "drug-related condition of probation" to "include a probationer's specific drug treatment regimen, employment, vocational training, educational programs, psychological counseling, and family counseling." Cal.Penal Code § 1210.01(f) (West 2001).

In *People v. Dagostino*, 117 Cal.App.4th 974, 12 Cal.Rptr.3d 223 (2004), the California Court of Appeal, Fifth District, held the failure to report to a mental health "gatekeeper" was a violation of a drug-related condition of probation. *Id.* at 993, 12 Cal.Rptr.3d at 236. The court wrote:

> Appellant could not be placed in the appropriate drug treatment program until he was evaluated by the mental health "gatekeeper." Since a person cannot be placed in the appropriate drug treatment program without being evaluated, it follows that a drug treatment regimen includes the initial evaluation, and appearing or failing to appear for that evaluation "thus satisfies the definition of a drug-related condition of probation."

In *In re Taylor*, 105 Cal.App.4th 1394, 130 Cal.Rptr.2d 554 (2003), the California Court of Appeal, Second District, held that failure to report to one's probation officer involved "a drug-related condition of probation" and, thus, the trial court could not impose jail time. *Id.* at 1398, 130 Cal.Rptr.2d at 556. The court opined that although reporting to a probation officer "may be a condition of probation for any number of reasons, none of which is necessarily drug-related," Taylor was different in that his primary and perhaps only reason for reporting was for drug testing. *Id.* at 1398–99, 130 Cal.Rptr.2d at 557.

> It involves no linguistic or logical stretch to deem a probationer's obligation to take drug tests a part of his treatment regimen, because tests permit authorities to monitor a probationer's compliance with the program by ensuring he is abstaining from illegal drugs. Because one cannot be tested unless one shows up for the test, it follows that a drug treatment regimen includes appearing for tests. Appearing (or failing to appear) for a drug test thus satisfies the definition of a drug-related condition of probation.

*Id.* at 1398, 130 Cal.Rptr.2d at 557 (citations omitted).

The California Court of Appeal, Third District, held that a general condition requiring a defendant to report to his probation officer is not a drug-related condition of probation when the reporting is done by mail. *People v. Dixon,* 113 Cal.App.4th 146, 148, 5 Cal. Rptr.3d 917, 918 (2003). The court explained that "[t]his method of reporting could not have involved a drug test, nor was there anything else about reporting by mail that was peculiar to defendant's drug problems or drug treatment." *Id.* at 152, 5 Cal.Rptr.3d at 920.

In *People v. Johnson,* 114 Cal.App.4th 284, 7 Cal.Rptr.3d 492 (2004), the California Court of Appeal, Fourth District, opined that

> not every appointment with a probation officer is drug-related. Probation officers may require defendants on probation for drug-related offenses to meet with them for non-drug-related purposes. For example, such appointments might be related to a probationer's obligation to maintain a residence or employment approved by the probation officer, participate in other types of counseling programs, and satisfactorily comply with probation generally[.]

*Id.* at 297, 7 Cal.Rptr.3d at 500 (internal quotation marks and citation omitted). The court further stated that "[i]n light of her prior conviction of a violent felony, it was important that Johnson report to the probation officer for reasons other than assessing whether she was complying with the drug-related conditions of her probation." *Id.* at 299, 7 Cal.Rptr.3d at 501.

In *People v. Atwood,* 110 Cal.App.4th 805, 807–08, 2 Cal.Rptr.3d 67, 68–69 (2003), the California Court of Appeal, Third District, held that the state must adduce evidence that Atwood's failure to report to her probation officer did not involve a drug-related condition of probation.

In *In re Mehdizadeh,* 105 Cal.App.4th 995, 130 Cal.Rptr.2d 98 (2003), the California Court of Appeal, Second District, held that nonpayment of court-ordered restitution was a drug-related violation of probation. *Id.* at 1000–01, 130 Cal.Rptr.2d at 103. The payments included the cost of probation services in monitoring Mehdizadeh's compliance with the drug treatment conditions of probation; therefore, the Court of Appeal considered the payments to be "drug-related." *Id.* at 1000 n. 12, 130 Cal.Rptr.2d at 103 n. 12.

Herbert's failure to submit to drug/alcohol assessments clearly involved drug-related conditions of probation under California precedent. Herbert's failure to report to his probation officer may have involved a drug-related condition of probation under California precedent. Herbert's failure to notify his probation officer of a change of address did not appear to involve a drug-related condition of probation.

Finally, Herbert's failure to pay the crime victim compensation and probation service fees did not involve a drug-related condition of probation, notwithstanding *In re Mehdizadeh.* In *In re Mehdizadeh,* payments were in the form of "restitution" that included the cost of probation services in monitoring petitioner's compliance with the drug treatment conditions of probation. 105 Cal.App.4th at 1000 n. 12, 130 Cal.Rptr.2d at 103 n. 12. Herbert's required payments were not restitution that included the cost of probation services in monitoring Herbert's compliance with his drug treatment conditions of probation.[5]

The circuit court erred in its interpretation and application of HRS § 706–625(7). The circuit court should conduct a new resentencing hearing in light of this opinion.

## IV.

The Order of Resentencing/Revocation of Probation filed on July 23, 2004 in the Circuit

---

**5.** The crime victim compensation fee was imposed pursuant to HRS § 351–62.6 (Supp.2004) based on the "seriousness of the offense." None of that fee went to monitoring Herbert's compliance with conditions of probation.

The probation service fee was imposed pursuant to HRS § 706–648 (Supp.2000) based on the term of probation. Probation service fees are used by the judiciary "to monitor, enforce, and collect fees, fines, restitution, other monetary obligations owed by defendants, and other terms and conditions of probation." HRS § 706–649 (Supp.2003).

Court of the Second Circuit is vacated, and this case is remanded for further proceedings consistent with this opinion. Because we vacate and remand, Herbert's other points on appeal are moot.